CASE 28—PROCEEDING BY THE CITY OF GEORGETOWN TO STRIKE CERTAIN
TERRITORY FROM ITS CORPORATE LIMITS.—MAY 12.

# Gaskin & Others v. City of Georgetown.

APPEAL FROM SCOTT CIRCUIT COURT—JAMES E. CANTRILL, CIRCUIT
JUDGE.

FROM THE JUDGMENT Z. R. GASKIN AND OTHERS APPEAL. REVERSED.

CONTINUANCE—ABSENCE OF WITNESSES—DISCRETION OF COURT—ABUSE
OF DISCRETION.

On proceedings under Ky. St. 1903, sec. 3483, for striking certain territory from the corporate limits of a city, the pleadings raised the issues whether the proposed alteration was opposed by a majority of the resident voters of the territory affected, and whether the persons resisting the alteration were residents of the territory. An uncontradicted affidavit for continuance on account of the absence of twenty-four witnesses stated that they would testify that they were residents of the territory affected, and that all of the residents thereof were opposed to the change. On the day before the trial, immediately after the time for trial was set, a subpoena was issued for eighty-five witnesses against the change, but twenty-four of them were not served. HELD, that the refusal of a continuance was an abuse of the court's discretion constituting error.

L. F. SINCLAIR AND L. L. BRISTON FOR APPELLANTS.

1. Our contention is that under Ky. St., sec. 3483, regulating the changing of boundaries of cities of the fourth class that where a majority of the resident voters in a boundary proposed to be stricken from the city, are opposed to such change, that such change shall not be made.

2. The issue in this case, was that all the resident voters in the territory proposed to be stricken off, eighty-five in number, were opposed to such change, and on the trial an affidavit was filed asking for a continuance by reason of the absence of twenty-four witnesses residing in said boundary, for whom process had been issued, but not served, all of whom it was alleged would swear

if present, that they and all the other resident voters were opposed to such change, that due diligence had been used to procure the presence of such witnesses; and we submit that the refusal of the court to grant a continuance to procure these witnesses was an abuse of discretion for which a new trial should be had.

### AUTHORITIES.

City of Lebanon v. Creal, etc., 22 R., 865; Chandler's Adm'r v. Bush, &c., 22 R., 993.

VICTOR F. BRADLEY ATTORNEY FOR APPELLEE.

1. In response to the attorneys for appellants upon the question of whether the circuit court erred in overruling their motion for a continuance, we only desire to say that it will appear from the record that the witnesses of whose absence they complain are the appellants themselves, every one of them being a party to the proceeding.

2. There was evidence heard by the trial judge on both sides, on the trial of this issue and the court after hearing the evidence decided the issue upon the facts proven, and this appeal should be dismissed.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING

The city of Georgetown, August 1, 1902, by its board of council, passed an ordinance proposing to strike certain territory therein described from the corporate limits of that city, after which a petition was filed in the Scott circuit court by the city, through its mayor and board of council, in accordance with section 3483, Kentucky Statutes, 1903, alleging a compliance with the provisions of that section, and praying the court to strike the described territory from the corporate boundary of the city. At the October term, 1902, of the circuit court the appellant Z. R. Gaskin and about eighty other persons, citizens and legal voters of the territory proposed to be stricken off, filed an answer to the petition of appellees, which traversed the allegations thereof, and

interposed by affirmative averments certain objections to the striking from the city of Georgetown of the territory described in the ordinance and petition; that is to say, it is averred in the answer that to strike the proposed territory from the city would result in injury to the city, and to the property and legal rights of the inhabitants residing in the territory sought to be stricken off, in that it would deprive them of police, fire, and water protection, prevent their children from attending the graded school for colored children in the city; and, finally, that not only a majority, but every citizen, resident, and voter of the territory sought to be stricken off was opposed to the change. The answer was signed by nearly all the voters and taxpayers of the territory sought to be stricken off. The reply filed by appellees not only traversed the affirmative allegations of the answer, but, in addition, alleged that the persons signing the answer did not reside in the territory sought to be stricken off, and that a majority of the voters and residents of the territory in question were not opposed to the change. On October 23, 1902, the court assigned the case for trial on the following day, and on that day, presumably upon the calling of the case for trial, appellants moved for a continuance until the succeeding term, filing in support of the motion the affidavit of appellants Z. R. Gaskin and Thomas H. Carter. The court, however, overruled the motion, refused the continuance, and proceeded to try the cause. The trial resulted in a judgment granting the prayer of the petition, and the striking of the territory described therein from the boundary of the city of Georgetown.

One of the grounds urged by appellants for a reversal of the judgment is the alleged error of the lower court in refusing the continuance. Trial courts are allowed a broad discretion in the matter of granting or refusing continuances,

which should be exercised in any given case according to
the facts and circumstances thereof. But when there is an
abuse of such discretion operating to the prejudice of the
substantial rights of the party applying for the continuance
it constitutes error, which may be corrected upon appeal by a
court of revisory power. It appears from the affidavit for con-
tinuance, which is in the usual technical form, that twenty-four
of appellants' important witnesses were absent when the
case was called for trial in the court below. It further ap-
pears from the statements of the affidavit that the absent
witnesses would, if present, have testified that they were
resident voters, property owners, and taxpayers of the ter-
ritory sought to be stricken from the corporate boundary of
Georgetown; that they and all the inhabitants of the ter-
ritory sought to be stricken off were and are opposed to the
proposed change; and that they had not been served with
the subpoenas issued and placed in the hands of the sheriff
the day before, though their names appear therein. In order
that the materiality of this testimony may be understood,
it will be well to bear in mind that two of the issues made
by the pleadings were, first, was the proposed alteration of the
boundary of the city of Georgetown opposed by a majority
of the resident voters of the territory proposed to be stricken
off? Second, were the persons resisting the striking off
the proposed territory resident voters of such territory?
Section 3483, Ky. St., 1903, as amended by Act March 22,
1902, p. 165, c. 73, provides the mode whereby the boundary
of a city or town may be added to or reduced. When such
action is desired, it must, according to the provisions of
the statute, *supra,* begin with the enactment by the board
of council of an ordinance accurately defining the boundary
to be added or stricken off. The ordinance must be published
for not less than three weeks in a newspaper, or, if there

be no newspaper in the city or county, by advertisement by handbills, to be posted for at least fifteen days at four or more public places in the city, and as many at public places within the territory to be annexed or stricken off. Within thirty days after the adoption, publication, and advertisement of such ordinance, and twenty days before the next succeeding term, a petition shall be filed in the circuit court of the county within which the city may be situated, in the name and on behalf of the city, showing compliance with the statute as to the enactment of the ordinance, its publication or advertisement, the object and purpose thereof, together with an accurate description, by metes and bounds, of the territory proposed to be annexed or stricken from the city, and praying for a judgment to annex or strike from the city the territory described, as the object may be. The statute further provides that notice of the filing of the petition shall be given in the same manner as provided for notice of the passage of the ordinance. If no defense be made at the first term of the court after the filing of the petition and notice of same, and the court shall make no order granting further time for making defense, the court shall render a judgment annexing or striking off the proposed territory, as the object of the proceeding may be. "But at the first term of the circuit court, or within the time fixed by the court by its order, any one or more of the resident voters of the territory proposed to be annexed or stricken off, may file a defense in said proceedings, setting forth the reason why such territory, or any part thereof, should not be annexed to the city, or why the limits of the city should not be reduced. The case shall be tried by the court without the intervention of a jury. If the court upon hearing be satisfied that less than a majority of the resident voters of the territory sought to be annexed, or stricken off, have

Gaskin, et al v. City of Georgetown.

remonstrated against the proposed extension or reduction, and that the proposed extension or reduction of the limits of the city, as the case may be, will be for the interest of the city, and will cause no material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and the proposed extension or reduction shall be decreed.    But if the court shall find that a majority, or more, of the resident voters of the territory to be affected or the owner or owners of said property, if there be no resident voters, remonstrated against such change, and that such change will cause material injury to the owners of real estate in the limits of the proposed extension or reduction, it shall so find, and said extension or reduction shall be denied.  .  .  ."

We take it to be the meaning of the statute, *supra* that, though the trial court is required to consult the wishes of the resident voters or property owners of the territory sought to be added or stricken off, the will of the majority, the one way or the other, is not absolute, but should be permitted to control, unless the conditions mentioned in the statute that would prevent its doing so are found by the court to exist. In any event, it was not only proper, but necessary, for the chancellor to ascertain whether a majority of the resident voters of the territory proposed to be stricken from the boundary of the city of Georgetown favored or opposed the change, and whether such of the persons as were resisting the changes were or were not resident voters of the territory proposed to be stricken off; for these were questions that vitally entered into, and should have had great weight in, the determination of the main question involved.  There can, therefore, be no doubt of the materiality of the testimony of the absent witnesses set forth in the affidavit.  The fact that the absent witnesses were residents and voters of

Gaskin, et al v. City of Georgetown.

the territory sought to be stricken off could doubtless have been proved by appellants, or others present at the trial, but the facts as to whether they favored or opposed the striking off the proposed territory, and whether they did or not sign the answer filed in the case, could have been proved only by themselves. The case is one in which numbers count. The record does not contain a bill of evidence heard on the trial in the court below, but it appears from a signed statement of the judge of that court, which may be found in the record, that comparatively few of the many witnesses summoned, or of the persons interested in the case, testified; certainly not a sufficient number of them to enable the court to ascertain whether a majority of the resident voters in the territory proposed to be stricken off were or not opposed to the change of boundary.

If the fact that a majority of the voters residing in the territory proposed to be stricken off were opposed to the striking off could have been ascertained in no other way than by introducing as witnesses all the voters in the territory, appellants had the right to introduce them upon the trial, if their attendance could reasonably be procured, and were entitled to a reasonable time and opportunity to have them summoned. The question of diligence in any given case must depend upon the facts and circumstances thereof.

Appellants and those associated with them in resisting the proposed change of boundary were not made parties to the action by appellees, but upon their own motion, and by filing answer during the appearance term. The framers of the statute evidently had in mind the difficulties likely to arise in the carrying out of its provisions. So, in view of the large number of persons to be affected by changes of municipal boundaries, to give them opportunity to make

known their approval or objections to such changes, and at
the same time prevent undue haste upon the part of the
courts in passing upon the civil and property rights to be
affected by the statute, it authorizes the court in which an
action such as this is pending, in the event the resident
voters of the territory proposed to be annexed or stricken
off have not time or reasonable opportunity to file a defense
during the first term succeeding the bringing of the action,
to fix by its order a later time subsequent to such term with-
in which to allow the defense to be filed. It would be but
fair to presume that the answer was filed as soon as it could
be prepared after appellants learned of the pendency of the
action. It is true that section 9 of the practice act pro-
vides that, "unless otherwise directed by the parties, the
clerk shall issue subpoenas for witnesses to the first day of
the term, and they shall attend at such days as the case
in which they are subpoenaed shall be set for trial, and
until the same is disposed of by trial or continuance; pro-
vided, however, the court may by rule entered upon its
order book direct the clerk to set actions at law for con-
venient days during the term as provided above; and to
issue subpoenas to said days, instead of to this first day,
as provided above." See Acts 1902, p. 273, c. 122. It will
not, however, be contended that the foregoing rule of prac-
tice has any application to persons made parties to the
action after the commencement of and during the appear-
ance term.

It appears from the record that on October 23, 1902, this
case was assigned for trial on the following day, October
24th. It further appears that on the 23d of October, and
immediately after the assignment of the case for trial, ap-
pellants caused subpoenas to be issued for eighty-five wit-
nesses, including those for whose absence the continuance was

Gaskin, et al v. City of Georgetown.

asked, which subpoenas were at once placed in the hands of the sheriff for service, but for want of time he was unable to obtain service upon the twenty-four witnesses named in the affidavit, consequently, by reason thereof, and of the court's refusal to grant the continuance, appellants were deprived of the benefit of their testimony. It was the duty of these absent witnesses, as parties to this action, to attend court, and be present at the trial, and appellants for that reason had the right to assume that they would do so; yet they did not in fact rely upon such assumption, but caused subpoenas to issue for them when the case was assigned for trial, as already indicated. The fact that the absent witnesses were parties to the action, or that they did not take sufficient interest in the case to attend court and testify without being subpoenaed, should not have been allowed to prejudice the rights of appellants, to whom their testimony was as important as if they had not been parties.

It is, however, insisted for appellees that, if the witnesses named in the affidavit all lived in the territory proposed to be stricken off, they could or ought to have been found by the officer to whom the subpoenas were given for service, and the fact that they were not found is urged as proof that they did not live in the territory indicated. There being nothing in the record to contradict the statements contained in the affidavit that they did reside in such territory, that statement, for the purpose of determining whether the continuance should have been granted, must be accepted as true. Besides, considering the shortness of the time afforded him for serving the subpoenas, it is not strange that the sheriff should have failed to find twenty-four out of eighty-five witnesses named therein. Their temporary absence from home, whether to avoid the subpoena or on legitimate

business, would, under the circumstances, have prevented its service upon them.

The case of Lebanon v. Creel, 109 Ky., 363, 59 S. W., 16, 22 Ky. Law Rep., 865, relied on by appellants, was decided under the former statute, some of the provisions of which were materially different from those of the present or amended statute, for which reason we do not regard that decision as applicable here.

Being of the opinion that there was no want of diligence upon the part of appellants in this case, therefore, because of the error of the lower court in refusing to grant them the continuance asked, the judgment is reversed, and cause remanded, with directions to grant them a new trial, and for further proceedings consistent with the opinion herein.